John ANTHONY, Jr., Appellant,

v.

UNITED STATES, Appellee.

Aaron ANTHONY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 8208, 8209.

District of Columbia Court of Appeals.

Argued May 7, 1975.

Decided July 20, 1976.

Michael P. Bentzen, Washington, D.C., appointed by the court, for appellants.

Michael A. Pace, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry and Martin J. Linsky, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, FICKLING and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellants are brothers appealing from their jury convictions of assault with intent to commit robbery. D.C.Code 1973, § 22–501. Their only claim of error is that the trial court's instructions on the elements of the offense were plainly erroneous. We affirm.

Viewed in the light most favorable to the government, the record reveals that on an evening when he was assigned to an "old clothes" tactical unit, Metropolitan Police Sergeant Patrick Lanigan was being trailed by appellants through what he knew to be an area with a high incidence of robberies. After the two men followed Lanigan for awhile, appellant Aaron Anthony asked him for a cigarette. As Lanigan turned, he saw that each appellant had his hand in his pocket, with protruding bulges which were aimed at Lanigan's midsection. One of the appellants told Lanigan to "Give it up." Lanigan grabbed Aaron, and, using him as a shield, drew his service revolver and pointed it toward John, who turned and ran. As the latter fled,. Lanigan saw a shiny object in his hand. No weapon was found on Aaron.

John was pursued by another plainclothes officer, who observed him make a tossing motion and heard a "clunk" on the ground immediately thereafter. John was apprehended, and, a few minutes later, the officers found a revolver in the area through which he had run.

Both appellants testified. They denied having accosted Sergeant Lanigan, disclaimed any knowledge of the recovered pistol, and maintained that John had run because Lanigan drew his gun on them without provocation.

The indictments charged appellants with assault with intent to commit robbery while armed, D.C.Code 1973, §§ 22–501, –3202;

assault with intent to commit robbery, *id.* § 22–501; assault with a dangerous weapon, *id.* § 22–502; and carrying a pistol without a license, *id.* § 22–3204. The jury was instructed on those charges, and on the lesser-included offense of attempted robbery, *id.* § 22–2902. It found each appellant guilty only of assault with intent to commit robbery; not guilty verdicts were returned on all other counts.

■ In its instructions on the elements of the offense of assault with intent to commit robbery, the trial court defined an assault as "an attempt or effort with force or violence to do injury to the person of another, coupled with the *apparent present ability* to carry out such attempt or effort." (Emphasis added.) The instruction given followed the standard charge outlined in the *D.C. Bar Ass'n Criminal Jury Instructions for the District of Columbia,* No. 4.11 (2d ed. 1972). Trial counsel expressed satisfaction with the instructions. However, appellants now urge that the instruction misstated the law of assault by reducing the element of present ability to inflict injury to the quality of being merely "apparent", instead of that of actual, existing ability. Unless appellants can demonstrate that the instruction which they challenge for the first time on appeal was so plainly erroneous as to have resulted in a miscarriage of justice, their claim of error is not properly cognizable. *See* Super.Ct.Crim.R. 30; *Adams v. United States,* D.C.App., 302 A.2d 232 (1973). We conclude that there was no error.

■ The assault which comprises an essential element of the offense of assault with intent to commit robbery is common law assault. The established definition thereof is:

"[A]n attempt with force or violence to do a corporal injury to another; and

may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." [*Guarro v. United States,* 99 U.S.App.D.C. 97, 99, 237 F.2d 578, 580 (1956), quoting *Patterson v. Pillans,* 43 App.D.C. 505, 506–07 (1915).]

The thrust of appellants' argument is that the "present ability" referred to in the quoted definition is an actual ability, and that absent proof of this element the crime of assault has not been established. Moreover, appellants urge that their convictions were perforce the fruits of the challenged instruction on "apparent present ability" to inflict harm, because the jury rendered findings of "not guilty" as to all of the charges which were predicated upon the possession and use of the recovered weapon. We disagree with both aspects of appellants' argument.

■ No prior case in this jurisdiction has decided specifically whether the crime of assault requires that the perpetrator possess the actual ability to inflict the threatened harm. There is a conflict of authority on this question in other jurisdictions. Based upon an analysis of the historical development of the offense, the recognized definition of assault as stated in the *Guarro* case, *supra,* and the interests intended to be protected by the criminal law, we conclude that an assailant's undisclosed present inability to do harm does not preclude a conviction for assault.

Despite historical distinctions, certain aspects of the concepts of a criminal assault and the tort of assault have merged, enlarging the criminal concept to encompass such conduct as could induce in the victim a well-founded apprehension of peril.[1] *See* Perkins Criminal Law 116–122 (2d ed.

---

1. While the contemporary common law definition of assault has thus evolved, there are jurisdictions which have imposed, through statutory enactments, a more restricted definition of criminal assault, and have made actual ability to cause harm a requisite element of the crime. *See* Perkins Criminal Law 122 n. 58 (2d ed. 1969).

1969); *People v. Wood,* 10 A.D.2d 231, 199 N.Y.S.2d 342, 346–48 (1960). Under this expanded concept of common law assault, a lack of actual ability to inflict the harm threatened is largely irrelevant, since the behavior of the assailant still might be such as would generate fright in the intended victim. Consistent with this analysis, many—if not the majority of—jurisdictions hold that if a defendant possesses the apparent ability to accomplish the threatened injury, an assault may be found. *See, e. g., State v. Wilson,* 276 So.2d 45 (Fla.1973); *Hudson v. State,* 135 Ga.App. 739, 218 S.E.2d 905 (1975); *State v. Yanda,* 259 Iowa 970, 146 N.W.2d 255 (Iowa 1966); *Hayes v. State,* 211 Md. 111, 126 A.2d 576 (1956); *Commonwealth v. Henson,* 357 Mass. 686, 259 N.E.2d 769 (1970); *State v. Parker,* 378 S.W. 274 (Mo.App. 1964); *State v. Brough,* 112 N.H. 182, 291 A.2d 618 (1972); *State v. Drayton,* 114 N.J.Super. 490, 277 A.2d 398 (1971); *People v. Wood, supra; State v. Stewart,* 73 Wash.2d 701, 440 P.2d 815 (1968). *See also* 11 Devitt and Blackmar, Federal Jury Practice and Instructions § 24.04 (2d ed. 1970); *Brundage v. United States,* 365 F.2d 616, 619 (10th Cir. 1966).

The rationale behind the so-called apparent ability rule, to which we subscribe, is that:

"[I]t is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery, that is material; but what his conduct and the attending circumstances denote at the time to the party assaulted. * * * It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace." [*Commonwealth v. Henson, supra,* 259

N.E.2d at 773, quoting *Commonwealth v. White,* 110 Mass. 407, 409.]

Despite the fact that the apparent ability rule prevails as the standard in many jurisdictions (and appears in both the local and purely federal standardized jury instructions employed in the courts in this jurisdiction), appellants argue that two factors indicate that such a rule has been rejected in the District. First, appellants point to the absence of the word "apparent" from the commonly-cited definition of assault in the *Guarro* case, *supra.* See *In re D.W.J., Jr.,* D.C.App., 293 A.2d 268, 269 (1972); *Harris v. United States,* D.C.App., 201 A. 2d 532 (1964). Second, appellants cite this court's bare comment that "[a]ctual fear on the complainant's part is not a necessary element of assault", as indicating that the apparent ability rule, grounded as it is upon the assailant's potential impact on the victim, has been disapproved by us. *See Willis v. United States,* D.C.App., 250 A.2d 569, 570 (1969). *See also Harris v. United States, supra,* at 534. We are unpersuaded by appellants' contentions.

The fact that the term "apparent" is not in the *Guarro* definition of assault does not, in our view, signify that "present ability" must connote actual present ability. Rather, the more natural reading would be that at the time of the assault the surrounding circumstances must denote the intention and present ability to do immediate violence. If an aggressor's conduct conveys the capacity to inflict harm, this aspect of the *Guarro* definition of assault has been fulfilled.[2]

Appellants further assert that the "apparent present ability" instruction erroneously transfers the relevant inquiry from the actual conduct of the accused to the

---

2. Professor Perkins specifically cites the *Guarro* case as an example of a definition which, while failing to use "apparent", does not necessarily refer to actual present ability. He states:

Where criminal assault has been enlarged by the addition of the tort theory, this reference [to present ability] is to such circumstances as are sufficient to create a reasonable apprehension of receiving an immediate battery on the part of another person [Perkins, Criminal Law, *supra,* at 122 (footnote omitted).]

mental state of the victim, and in so doing conflicts with those cases which hold that proof of actual fear on the part of the victim is not an essential element of the crime of assault. Their argument on this point is not persuasive.

■ While certain conceptual aspects of tort theory have been absorbed into the criminal offense of assault, it is not necessarily the case that the victim must be shown factually to have experienced apprehension or fear in order to establish the offense.[3] In our view the better position holds that although the question whether the defendant's conduct produced fear in the victim is relevant, the crucial inquiry remains whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility. Contrary to appellants' contentions, application of the standard of "apparent present ability" does not elevate the victim's subjective perception to an element of the crime of assault. Rather, this standard focuses attention squarely upon the menacing conduct of the accused and his purposeful design either to engender fear in or do violence to his victim. Both the doctrine of apparent ability and the rule abrogating the necessity to show the victim's actual fear stem from a similar appreciation of the wrongfulness of the criminal conduct involved. The criminal law, designed as it is to protect public order, proscribes acts which increase "the potential for injury, and the tendency toward resist-

ance, conflict, and violence." *Commonwealth v. Tarrant,* 326 N.E.2d 710, 714 (Mass.1975). That appellants' conduct went far toward creating a violent disruption of order is evident, and they cannot avoid criminal responsibility on the ground that they arguably lacked the actual ability to accomplish the violence they were found by the jury to have attempted. Nor could they successfully argue, for example, that their intended victim was not actually put in fear because his training as a police officer might have made him resistant to such threats of danger.[4] *Cf. Commonwealth v. Slaney,* 345 Mass. 135, 185 N.E. 2d 919 (1962).

Our reasoning is further strengthened by analogy to those cases here and in other jurisdictions which have sustained convictions for assault with a dangerous weapon (D.C.Code 1973, § 22–502) irrespective of the weapon's actual inability to inflict great bodily injury. *See Harris v. United States,* D.C.App., 333 A.2d 397, 400 (1975). *See also Bass v. State,* 232 So.2d 25 (Fla. App.1970); *State v. Curtis,* 14 Wash.App. 735, 544 P.2d 768 (1976). The rationale of such cases is applicable here. The intentional display of a weapon, whether or not it is operable or even real, reasonably may be said to create "an objective state of danger", *Baker v. United States,* 412 F.2d 1069, 1071 (5th Cir. 1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970), which is likely to trigger a retaliatory response and lead to escalating violence.[5]

---

3. We are aware, however, that there are jurisdictions which so hold. *See, e. g., People v. Sanford,* 65 Mich.App. 101, 237 N.W.2d 201 (1975); *State v. Sawyer,* 28 N.C.App. 490, 221 S.E.2d 518 (1976).

4. In fact, Sergeant Lanigan did testify that he was afraid for his life, and we reiterate that this testimony was relevant to the issue of whether appellants' conduct was such as could reasonably have represented impending harm to an average victim.

5. Consistent with the apparent ability rule in assault cases is the law in this jurisdiction which provides that specific intent to inflict

serious injury with the weapon is not a necessary element of assault with a dangerous weapon. *Parker v. United States,* 123 U.S. App.D.C. 343, 359 F.2d 1009 (1966). Assault is a general intent crime. *Pino v. United States,* 125 U.S.App.D.C. 225, 370 F.2d 247 (1966), *cert. denied,* 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977 (1967). Thus, while there must be an intention to do the act which constitutes the assault, there need be no subjective intention to bring about an injury. *See State v. Bitting,* 162 Conn. 1, 291 A.2d 240 (1971); *State v. Anania,* 340 A.2d 207 (Me.1975). It therefore cannot be argued that the lack of actual ability to execute the

It is obvious that in the legislative judgment an assault perpetrated with an ostensibly dangerous weapon is deemed a more serious offense than a simple assault. *Compare* D.C.Code 1973, § 22–502, *with id.* § 22–504. *See Parker v. United States,* 123 U.S.App.D.C. 343, 346, 359 F.2d 1009, 1012 (1966). The additional risks of violence attendant when an apparently lethal instrumentality is used already have been mentioned. Similarly, significantly more serious sanctions are imposed for an assault with intent to commit robbery than for a simple assault or even for an assault with a dangerous weapon.[6] This disparity in sanctions rests upon a recognition of the greater culpability of an individual intent upon committing robbery and the increased hazards of attempted violence in the robbery context. As the court commented in *Baker v. United States, supra,* at 1072:

> [The] apparent capacity to carry out . . . harm, combined with a highly charged atmosphere and the possibility of action by employees or others to prevent the robbery, is a complex of circumstances in which the person on the scene is in jeopardy of harm which may occur in any one of various ways.

We are satisfied that the jury was properly instructed on the necessary elements of the offenses with which appellants were charged. No more than an apparent present ability to commit the threatened act of violence need be found to have an assailant's intended forcible act constitute an assault. *See Lyles v. State,* 10

Md.App. 265, 269 A.2d 178 (1970); *Williams v. State,* 4 Md.App. 643, 244 A.2d 619 (1968). Whether under. the circumstances appellants' conduct was such as would satisfy the applicable standard was a question of fact to be resolved by the jury under appropriate instructions.[7]

*Affirmed.*

threatened injury necessarily negates the intent element of the assault.

6. Assault with intent to commit robbery, D.C. Code 1973, § 22–501, provides for up to 15 years' imprisonment. The maximum penalty for assault with a dangerous weapon is 10 years' imprisonment, *id.* § 22–502. Simple assault is punishable by up to one year in prison, *id.* § 22–504.

7. We agree with appellants that for purposes of resolving the issue of whether the jury was correctly instructed on the elements of assault, it is irrevelant that the jury may have

found a gun actually to have been present for purposes of its guilty verdicts on assault with intent to rob while at the same time acquitting appellants of the specific weapons offense. However, we note that the jury could well have found that the actual present ability to commit the assault did exist in the form of the gun which was recovered, despite the seemingly inconsistent verdicts on the other counts. *See Matthews v. United States,* D.C.App., 267 A.2d 826 (1970), *cert. denied,* 404 U.S. 884, 92 S.Ct. 221, 30 L.Ed.2d 166 (1971); *Branch v. United States,* D.C.App., 263 A.2d 258 (1970).