Nathaniel C. ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1729.

District of Columbia Court of Appeals.

Submitted Jan. 16, 1986.

Decided March 12, 1986.

Richard S. Stern, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Wallace H. Kleindienst, and Fred Grabowsky, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of simple assault [1] and carrying a pistol without a license. [2] On appeal he challenges only the

---

1. D.C.Code § 22–504 (1981). The first count of the indictment purported to charge appellant with assault on a police officer with a dangerous weapon, in violation of D.C.Code § 22–505(b) (1981). Before the case went to the jury, however, the trial court ruled that the first count was improperly worded and that it charged only the offense of assault on a police officer, D.C.Code § 22–505(a) (1981). The jury found appellant guilty of simple assault, a lesser included offense. *See Petway v. United States,* 420 A.2d 1211 (D.C.1980).

2. D.C.Code § 22–3204 (1981).

assault conviction, contending that the evidence was insufficient to go to the jury. We disagree and affirm.

## I

Shortly after 11:00 o'clock one evening, Sergeant Ronald Monroe of the Metropolitan Police was driving to work in his private automobile. His tour of duty was scheduled to begin at 12:00 midnight. Although dressed in full uniform, he was wearing a light blue down jacket over his uniform shirt, which covered his badge, shoulder patch, and name tag. While headed north on Georgia Avenue, Sergeant Monroe heard a series of gunshots coming from the direction of Farragut Street. He immediately made a U-turn to go back and investigate. Just as he turned, he saw a large number of people running from the 900 block of Farragut Street onto Georgia Avenue. Monroe "cautiously" turned his car into Farragut Street, then stopped in the middle of the street and turned on his high-beam headlights.

Appellant was standing about thirty to forty yards away, holding a pistol. Monroe got out of his car with his service revolver in his left hand, leaving his bright lights on in the hope that appellant would not be able to see him. As he stepped from the car, he unzipped his jacket, identified himself as a police officer, and told appellant, who was now only "two car lengths" from him, to drop the gun. After Monroe shouted, "Police officer; put the gun down," appellant turned toward him and pointed the gun at him.

Monroe again identified himself as a police officer, but received no response from appellant, who by then was crouched behind the rear of a car. Once more Monroe told appellant to put the gun down, and for a few seconds Monroe and appellant moved back and forth behind the parked cars, closely watching each other's movements. Finally, appellant laid his gun on the ground, stood up, and started to walk away rapidly. Monroe again yelled, "Police, stop," but appellant kept walking. Monroe moved quickly towards him and placed him under arrest, then went back and picked up the gun, a silver pistol with tape around the handle.[3] Later, at the police station, another officer examined the gun and found that it contained four live rounds of ammunition. Appellant was wearing a shoulder holster, which was seized and introduced into evidence at trial.

Appellant presented no evidence.

## II

The standards for reviewing claims of insufficient evidence are firmly established. This court "must view the evidence in the light most favorable to the government, mindful of the jury's right to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *McClain v. United States*, 460 A.2d 562, 567 (D.C. 1983) (citations omitted). Reversal is warranted "only where there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Head v. United States*, 451 A.2d 615, 622 (D.C. 1982); *see Murchison v. United States*, 486 A.2d 77, 81 (D.C.1984). Although the government is not required to produce evidence that compels a finding of guilt, *Fox v. United States*, 421 A.2d 9, 12–13 (D.C. 1980), it must present "at least some probative evidence on each of the essential elements of the crime." *Jennings v. United States*, 431 A.2d 552, 555 (D.C.1981) (citation omitted), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982).

Although assault is a misdemeanor in the District of Columbia, Congress chose not to define it when it enacted the statute that is now D.C.Code § 22–504 (1981).[4] The

---

**3.** Other evidence established that appellant did not have a license to carry a pistol.

**4.** Section 22–504 provides:

Whoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than $500 or be imprisoned not more than 12 months, or both.

This language has remained unchanged since the statute was enacted in 1901.

courts, therefore, have traditionally defined assault as consisting of the following three elements:

1. That the defendant made an attempt or effort, with force or violence, to do injury to the person of another;

2. That at the time he made such an attempt or effort, he had the apparent present ability to effect such an injury; and

3. That, at the time of the commission of the assault, he intended to do the acts which constituted the assault.

Criminal Jury Instructions for the District of Columbia, No. 4.11 (3d ed. 1978), quoted with approval in *Sousa v. United States*, 400 A.2d 1036, 1044 (D.C.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979). The standard instruction, which the trial court gave in this case, is all right as far as it goes, but it does not cover all situations.

■■■ There are two distinct kinds of criminal assault. The more common is the "attempted-battery" type, described in the standard instruction and in *Sousa*. The other is the "intent-to-frighten" or "tort" type, which consists of some threatening conduct intended either to injure or to frighten the victim. *See* W. LaFave & A. Scott, Handbook on Criminal Law § 82, at 610–612 (1972). Both varieties are recognized in the District of Columbia. The major difference between them is in the nature of the intent that must be proven. Attempted-battery assault requires proof of an attempt to cause a physical injury, which "may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Patterson v. Pillans*, 43 App. D.C. 505, 506–507 (1915). Intent-to-frighten assault, on the other hand, requires proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; an actual battery need not be

attempted. *See* W. LaFave & A. Scott, *supra*.

■■ If the trial court in the case at bar had given only the standard instruction, we would have to reverse the conviction because there was no evidence that appellant ever attempted to cause actual physical injury to Sergeant Monroe. To establish an attempted-battery type of assault on the facts of this case, the government would have had to prove that appellant either fired the gun or attempted to fire it. Fortunately, however, the court also instructed the jury:

To point a dangerous weapon, such as a pistol, at another person in a menacing or threatening manner, or to use a weapon, such as a pistol, in any manner that would reasonably justify the other person in believing that the weapon might be immediately used against him, constitutes an assault under our law.

This was a correct statement of the law.

■■ In *Anthony v. United States*, 361 A.2d 202 (D.C.1976), this court recognized for the first time that the crime of assault included not only attempted battery but also "such conduct as could induce in the victim a well-founded apprehension of peril." *Id.* at 204 (citations and footnote omitted). We reiterated that holding a few years later in *Williamson v. United States*, 445 A.2d 975 (D.C.1982). Taking note of "this expanded concept of common law criminal assault," we enlarged the standard three-part definition to include the intent-to-frighten type of assault as well as the attempted-battery type:

First, there must be an act on the part of the defendant; mere words do not constitute an assault.... The act does not have to result in injury[.] ... [I]t can be either an actual attempt, with force or violence, to injure another, or a menacing threat, which may or may not be accompanied by a specific intent to injure, on the part of the defendant.... [Second], at the time the defendant commits the

act, the defendant must have the apparent present ability to injure the victim.... [Third], at the time the act is committed, the defendant must have the intent to perform the acts which constitute the assault.

*Id.* at 978 (citations and footnotes omitted).

In the case at bar, there was sufficient evidence before the jury to prove each of these three elements beyond a reasonable doubt. First, appellant's act of pointing a gun at Sergeant Monroe constituted "a menacing threat." It is irrelevant whether appellant had a specific intent to injure Monroe. An intent to frighten is sufficient, and that intent can be inferred from the pointing of a gun. Second, from the fact that appellant had a gun in his hand, it is reasonable to infer (it would be unreasonable not to infer) that appellant had the "apparent present ability to injure the victim." *Williamson, supra,* 445 A.2d at 978.[5] *Anthony* makes clear that the victim, in this case Sergeant Monroe, need not "be shown factually to have experienced apprehension or fear in order to establish the offense." 361 A.2d at 206 (footnote omitted). Instead, "the crucial inquiry [is] whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.*[6] Finally, the jury was free to infer that appellant had the intent to perform the act, in this case the pointing of the gun, that constituted the assault; appellant presented no evidence suggesting that his actions were inadvertent, accidental, or involuntary.

Thus we hold that the evidence was sufficient to permit the case to go to the jury, and that the jury, under proper instructions, validly found appellant guilty of assault. To avoid problems in future cases, however, we recommend that the definition of assault in the standard instruction[7] be revised so as to state the elements of the offense as we stated them in *Williamson.*

*Affirmed.*

---

**5.** We said in *Anthony* that "[t]he intentional display of a weapon ... reasonably may be said to create 'an objective state of danger' ..." 361 A.2d at 206 (citation omitted). This principle is incorporated into the standard instruction on the crime of assault with a dangerous weapon:

> To point a dangerous weapon at another person in a menacing or threatening manner, or to use a weapon in any manner that would reasonably justify the other person in believing that the weapon might be immediately used against him, constitutes an assault with a dangerous weapon.

Criminal Jury Instructions, *supra,* No. 4.12.

**6.** That the victim in this case was a police officer is also irrelevant. As we said in *Anthony,* it cannot be argued that the "intended victim was not actually put in fear because his training as a police officer might have made him resistant to such threats of danger." 361 A.2d at 206 (citation and footnote omitted).

**7.** Criminal Jury Instructions, *supra,* No. 4.11.