**John N. MIHAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CM–326.**

District of Columbia Court of Appeals.

Submitted May 14, 1992.
Decided Dec. 30, 1992.

Donna C. Becker, Washington, DC, appointed by this court, for appellant.

Jay B. Stephens, U.S. Atty., with whom Albert A. Herring, John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, DC, for appellee.

Before FERREN, Associate Judge, and PRYOR and BELSON, Senior Judges.

BELSON, Senior Judge:

A Superior Court judge found appellant John Mihas guilty of assault, in violation of D.C.Code § 22–504 (1989 Repl.), possession of a prohibited weapon, in violation of D.C.Code § 22–3214(b), and carrying a

deadly or dangerous weapon, in violation of D.C.Code § 22–3204, and sentenced him to time served (two months). Mihas contends that the evidence was insufficient to sustain a conviction on any of the three counts. We disagree, and therefore affirm.

## I.

In the late afternoon of October 11, 1990, the complaining witness, Paul Rinehart, was walking down an alley in his neighborhood, Cleveland Park, headed in the direction of a Seven–Eleven store on Connecticut Avenue. In the alley, he encountered appellant, a sixty-one year old man who was "living on the street" and carrying his possessions with him. According to Rinehart, he glanced at appellant Mihas as they passed each other and, shortly thereafter, heard something drop. When Rinehart turned in the direction of the sound, he saw Mihas bend down and pick something up. The two men were about ten to twelve feet apart at that time. Until that time Rinehart had seen no knife in Mihas' possession.

At that juncture, according to Rinehart, Mihas spoke first, saying "[w]hat are you looking at, punk? Get out of here," and repeated that statement a couple of times. Mihas then took several steps toward Rinehart, and it was during that approach that Rinehart first saw the knife. Rinehart feared that he might actually be assaulted—that Mihas might cut him. As Mihas approached, he held the knife pointed in the direction of Rinehart, holding it in his right hand at about belt-high, with the knife pointed downward at about a 45 degree angle. Mihas approached to within four or five feet of Rinehart. In response to Mihas' belligerent remarks, Rinehart responded, "What the hell do you want?" a couple of times. Rinehart made no further gestures toward Mihas; Rinehart then turned and left the alley; Mihas did not follow.

Testifying in his own behalf, Mihas said that he had the knife out before encountering Rinehart and was using it to clean his fingernails. When he confronted Rinehart, Mihas said, Rinehart looked at him "in a strange funny way, like that, you know, like who are you, but not speaking...." According to his own testimony, Mihas then said, "What are you looking at, Jocko?" and then as Rinehart passed by he added "reckless eyeballing can get you locked up," and then said "You're [sic] best bet, keep on going, you know, get back there." Rinehart, according to Mihas, might have tried to mumble something, and by then the individuals were twenty-five feet apart. When Mihas was later stopped by police, he was identified by Rinehart, and found to have in his possession a paring knife with a blade two and three quarters inches long.

The trial judge made several findings of fact, including "that there came a time when Mr. Mihas, with the knife still in his hand, displayed in a way in which Mr. Rinehart could see it, did approach Mr. Rinehart who remained stationary, and that the two gentlemen were close. That is, within five feet of each other." Without resolving whether Mr. Mihas said "what are you looking at, punk?" as distinguished from "what are you looking at, Jocko?" the trial judge found it was clear that from a close distance, with a knife held in his hand, Mihas did say "[y]our best bet is to keep on going" or "get out of here," words which ordered Rinehart to move along. The court went on to find that appellant committed the act of carrying the knife at the time of the confrontation—whether or not it had earlier been carried for the purpose of cleaning nails—and also found that the carrying of the knife was accompanied by several steps in the direction of Rinehart accompanied by words of commanding tone, and that Mihas' actions constituted a menacing threat, although not with any specific intent to injure. The trial court also found that Mihas had the apparent present ability to hurt Rinehart, that any person in the position of Rinehart would have felt concern for his safety, and that Mihas had the intent to act as he did, *i.e.*, to tell Mr. Rinehart to be on his way—at the point of a knife.

On the basis of the aforementioned findings of fact, the trial judge concluded that

appellant was guilty of criminal assault of the "intent-to-frighten" type, D.C.Code § 22–504 (1989 Repl.). With respect to possession of a prohibited weapon, the judge found that while there was no specific intent to injure, appellant had violated the statute, D.C.Code § 22–3214(b) because, as he explained to appellant, it was "a violation of the law to walk up to somebody, holding a knife, and order them around," or, in other words, that the appellant had used the weapon unlawfully against another in that he used it to commit an assault. The judge also concluded that the government had established that appellant had carried openly about his person a dangerous weapon which was capable of being concealed. The judge thereupon sentenced Mihas to the time he had served before trial.

## II.

In assessing Mihas' argument that the government had failed to produce sufficient evidence to establish his guilt of any of the three offenses charged, we must view the evidence "in the light most favorable to the government, recognizing the factfinder's role in weighing the evidence, determining the credibility of witnesses, and drawing justifiable inferences from the evidence." *Ford v. United States,* 498 A.2d 1135, 1137 (D.C.1985). To prevail on this challenge, Mihas must establish that the government presented "no evidence" upon which a reasonable mind could find guilt beyond a reasonable doubt. *Robinson v. United States,* 506 A.2d 572, 573 (D.C.1986). Moreover, in reviewing bench trials, this court will not reverse unless an appellant has established that the trial court's factual findings are "plainly wrong," or "without evidence to support [them]." D.C.Code § 17–305(a) (1989).

Applying these standards, we are unable to agree with Mihas' contention that the evidence failed to establish that he committed an act which constituted an assault, or had the necessary criminal intent to do so. This jurisdiction recognizes two types of assault: (1) "[a]ttempted battery assault which requires proof of an attempt to cause a physical injury, 'which may consist of any act tending to such corporal injury, accompanied with such circumstances as denoted at the time an intention, coupled with the present ability, of using actual violence against the person.'" *Robinson v. United States,* 506 A.2d 572, 574 (D.C. 1986) (quoting *Patterson v. Pillans,* 43 App.D.C. 505, 506–07 (1915)); and (2) intent-to-frighten assault which requires proof of "threatening conduct intended either to injure or frighten the victim." *Robinson, supra,* 506 A.2d at 574. In order to establish the latter type of assault, the government must offer "proof that the defendant intended either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; and actual battery need not be attempted." *Id.* (citing W. LaFave & Scott Handbook on Criminal Law § 82 at 610–612 (1972)). In addition, the requisite intent is the general "intent to perform the acts which constitute the assault." *Williamson v. United States,* 445 A.2d 975, 978 (D.C.1982). We are satisfied that the record here clearly supports the trial court's conclusion that Mihas had engaged in this type of assault, and that the findings of fact provided an adequate basis for that conclusion. The actions of Mihas included initiating the conversation between the two with the hostile question "What are you looking at?" followed by the appellation "Jocko" or "punk," and further followed by Mihas' instruction to Rinehart that he should "get out of here." These utterances were combined with Mihas' approach from ten to twelve feet away to within four or five feet of Rinehart, while holding a knife pointed in the direction of Rinehart belt high, and pointed downward at a 45 degree angle. On this record, we cannot overturn the trial court's finding that any person in Rinehart's position would have felt concern for his safety, the crucial inquiry in a case of this sort. *Robinson, supra,* at 575.

Likewise, with respect to the charge of possession of a prohibited weapon with the intent to use it unlawfully, we are satisfied that the trial court's findings were not plainly wrong or without evidence

to support them. Mihas challenges the trial court's findings on the basis that the evidence was insufficient to show that the knife that Mihas carried was a "dangerous weapon" under the statute, and was similarly insufficient to show that appellant's intent in carrying the paring knife was to use it unlawfully against another. Historically, we have determined which knives constituted "deadly or dangerous weapons capable of being so concealed" described in § 22–3204, by focusing upon the intent of the person carrying the knife, as well as upon the design or construction of the knife carried. *Scott v. United States,* 243 A.2d 54, 56 (D.C.1968). Mindful that the carrying of a knife for a legitimate purpose is not prohibited by the statute, *id.,* we have made the purpose for which the knife was being carried the ultimate test for determining whether it was a deadly or dangerous weapon. *Nelson v. United States,* 280 A.2d 531, 533 (D.C.1971); *Clarke v. United States,* 256 A.2d 782, 786 (D.C.1969); *Leftwitch v. United States,* 251 A.2d 646, 649 (D.C.1969).[1]

In the instant action, the trial court found, both in connection with the charge of possession of a prohibited weapon and the charge of carrying a dangerous weapon, that it was Mihas' "intent to carry that weapon in the context of telling Mr. Rinehart to stop looking at him and to get away from him, and that the knife was present, that he consciously, knowingly, presented [it] to Mr. Rinehart." Similarly, the element of Mihas' intent to use the weapon unlawfully against another person was established by the factual finding that Mihas acted with the specific intent to use the knife to warn Rinehart to be on his way, *i.e.,* to use it in connection with the assault upon Rinehart which was committed with the purpose of frightening him into moving out of the alley. We find no reason to overturn that judgment.

Finally we are not persuaded by Mihas' attack on his conviction for carrying a concealed weapon. It is plain from our foregoing discussion that the evidence supported the trial court's finding that Mihas had the intention to do the acts which constituted the carrying of a deadly or dangerous weapon, and that Mihas' purpose in carrying it was its use as such. Mihas does not argue that the relatively small object he carried was incapable of being concealed on his person.[2]

For the foregoing reasons, we reject Mihas' argument that there was insufficient evidence to support the convictions entered by the trial court, and we therefore affirm.

*Affirmed.*

PRYOR, Senior Judge, dissenting:

I readily accept the majority's statement of facts in this matter and similarly understand that in reviewing the sufficiency of evidence, we customarily view the evidence in the light most favorable to the government, giving it the benefit of reasonable inferences.

Yet this case causes me to pause. It is notable in my view because the result is driven, almost imperceptibly, by inference built upon other inferences. Appellant was charged with a less common form of assault: conduct deemed an intentional effort to frighten another. In the prosecution of most criminal offenses, we normally focus on the state of mind of the accused. But in this instance, the guilt of the accused, depends, in part, on the subjective perceptions of the complaining witness. Thus on the barest of evidence, where, it seems to

---

1. Appellant, extrapolating from D.C.Code § 22–3214(b) ("No person shall within the District of Columbia possess, with intention to use unlawfully against another ... [a] knife with a blade longer than 3 inches ..."), makes much of the fact that his knife was shorter than three inches. This selective reading, however, overlooks the very next words of the statute, which are "or other dangerous weapon." It was under this last-quoted language that Mihas was charged. He fails to offer any reason why the weapon he used does not come within this language. As length is just one factor to be considered, even a short knife, when wielded by one to use it unlawfully, can be dangerous.

2. Mihas does not argue on appeal that the government can not charge him with both possession of a prohibited weapon and carrying a concealed weapon. We note, in any event, that the court simply sentenced Mihas to time served.

me, that more attention has been given to the complainant's perceptions than the *mens rea* required of appellant, we are ultimately urged to give the prosecution the benefit of all inferences.

In an urban setting which includes a diverse range of many different types of people, it is undoubtedly true that appellant, a homeless person, and the complainant, a resident of an affluent section of the city, had a harsh encounter in an alley. However, when we look, on balance, at what happened, the government, in order to prevail, can only depend on a network of inferences. Even applying the customary litmus, the evidence is, in my opinion, insufficient. What we have is an unfortunate argument between two citizens which has been transformed into three criminal convictions. I respectfully dissent.