

# NUMBER 13-16-00439-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**FABIAN IGNACIO FAZ FLORES,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Contreras

Appellant Fabian Ignacio Faz Flores was convicted of the first-degree felony offenses of attempted capital murder (Count I) and aggravated assault of a public servant (Count II). *See* Tex. Penal Code Ann. §§ 15.01, 19.03(a)(1), 22.02(b)(2)(B) (West, Westlaw through 2017 1st C.S.). He was sentenced to concurrent forty-year prison terms.

In this appeal, appellant argues that: (1) his conviction on Count I was "based upon legal and factual grounds never submitted to the jury"; (2) the jury charge as to Count I omitted essential elements of the charged offense; (3) the trial court made an improper comment at the punishment stage; (4) the trial court erred in denying his request for an instruction on a lesser-included offense to Count I; (5) the evidence was insufficient to support conviction; and (6) his two convictions violate double jeopardy.

The State concedes that the two convictions violate double jeopardy and that one must be vacated. For the reasons set forth herein, we will reverse the judgment of conviction and render judgment of acquittal on Count I, modify the judgment on Count II, and affirm the judgment on Count II as modified.

## I. BACKGROUND

The indictment in this case alleged that, on or about June 11, 2015, appellant drove his vehicle toward Donna, Texas police officer Christopher Guerra while attempting to flee from the officer. The State later filed notice of its intent to use two prior felony convictions for punishment enhancement purposes. *See id.* § 12.42(c)(1) (West, Westlaw through 2017 1st C.S.) (providing that, if it is shown at a first-degree felony trial that the defendant has previously been finally convicted of a felony other than a state jail felony, on conviction the defendant shall be punished by imprisonment for life or for any term of 15 to 99 years and may be fined up to $10,000).[1] Appellant pleaded not guilty to the charged offenses and "not true" to the enhancement allegations.

---

[1] Although the State alleged that appellant had been previously been convicted of two felonies, the judgments of conviction for those alleged felonies were rendered on the same date. Accordingly, the habitual felony offender enhancement did not apply. *Cf.* TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through 2017 1st C.S.) (requiring, for habitual felony offender enhancement, that "the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final").

At trial, Guerra testified that he was patrolling in Donna on the night in question when he was dispatched to a residence on Tranquility Drive in response to a report of "a male subject assaulting a female." He later received a report from dispatch that there were children witnessing the assault. Guerra testified that he was heading southbound on Tranquility Drive and approaching the residence when he observed the following:

> [T]here's a vehicle without headlights traveling, about to pass me; and another truck that was stationary flashes the high beams, which indicates, by experience of law enforcement and other calls, a lot of times signaling possible suspect vehicle leaving the area. Well, the suspect is leaving the area without headlights. So, I turn. I make a quick u-turn and I see that the vehicle does not have his headlights on still. I turn on my lights and sirens, signaling the vehicle to stop. Like I said, the lights were on. I just turned on the sirens. The vehicle disregards a stop sign that's on Tranquility and Lunar, that little cul de sac, and starts traveling eastbound.

> Still refuses to stop. I'm calling out already a pursuit. I see another patrol unit, which is later on Officer [Candelario] Hernandez arriving on Hutto and Lunar. I see the vehicle still accelerating at good rates. It turns, misses Officer Hernandez's patrol cruiser; and from there I lost visual because of the lights of his unit kind of blinded me.

Guerra testified that the suspect vehicle "looked like it was being fixed" because it was a pickup truck with no bed, and it was painted with "gray primer."

The suspect vehicle then drove into a "grassy" area, at which point Guerra and Hernandez positioned their units in front of the suspect, but not blocking the suspect from driving forward. Guerra got out of his unit and, using his open driver's side door for cover, commanded the suspect to get out of his vehicle. Guerra testified:

> I tell him to get out. I could see a clear view of the suspect inside that vehicle, turn on the ignition, use his right arm, indicating to me that he's grabbing the shifter. He has his left arm on the steering wheel. He drops it down, the shifter, revs his engine and goes directly at me. When he's going directly at me, I do a quick unholster on my weapon, which I shot. I shot consecutively around seven shots. He passes on me. I'm going backwards when I'm shooting. I'm back peddling when I'm shooting to take cover behind my unit. He[] takes off. And continues to go south, a couple of feet and he stops.

3

At that point, the suspect, bleeding, emerged from his vehicle and got on the ground. Guerra identified the suspect in the courtroom as appellant.

When asked why he shot at appellant, Guerra testified that appellant "came at me with his vehicle. So, I tried to eliminate the threat." He stated his life was threatened and that he feared for his life. Guerra further testified that appellant looked "upset" and "angry" as he drove toward him.

On cross-examination, Guerra testified that he was not injured in the incident, but his patrol unit was damaged when he shot through the driver's side window. He stated that he was told by other officers that appellant's vehicle made contact with his patrol unit, causing a scratch on the door, but he agreed that there was no head-on collision. He explained that this was the first time in his five years of experience as a patrol officer that he had to use deadly force against a suspect. Guerra acknowledged that several of the rounds that he fired impacted the side of appellant's vehicle; however, he stated that once appellant's vehicle passed him completely, he stopped firing. He denied shooting at appellant from behind the patrol unit, and he denied that appellant's vehicle was parked when he started firing.

Hernandez, the second officer to arrive on the scene, testified that appellant disobeyed his command to get out of his truck. He stated that appellant drove his truck at Guerra and made contact with the door of Guerra's patrol unit.

Five days after the incident, following his release from the hospital, appellant gave a recorded statement to Texas Ranger Donato Vela. The recording, part of which was translated from Spanish to English, was played for the jury and transcribed into the record. In the recording, appellant stated that he understood his rights to have an attorney

4

present, to remain silent, and to terminate the interview at any time. Appellant proceeded to explain that, on the night in question, he was at his friend Mateo's house, which was "four or five houses down the street" from the house on Tranquility Drive where his common-law wife and children lived. Appellant then stated:

> I was on the motorcycle. So, around like 1:00 or 2:00, I think—I'm not too sure what time it was. I drive home like right around the corner. So, I drive to my house on the motorcycle. . . . And I get home and my wife's mad because I was drinking a couple of beers and I'm not supposed to be drinking. So, she starts slapping me on my motorcycle and she pushed me—I'm sitting on my motorcycle. She pushed, making me fall, right? So, I tried to push her away to stop hitting me. So, I finally get her off me and I wound up pushing my bike to my neighbors because she said she's calling the cops.
>
> So, I go back and get my—my truck. And as soon as I leave—I'm trying to go to my mom's house in Weslaco. . . . I get to a stop sign and I see a vehicle coming southbound on—before I—on Armstrong I think the street is. . . . I see an unmarked vehicle coming this way. So, I see him coming, right, so I go this way to come this way, but—but he got in the way, the car and I lost control and hit a fence or a ditch there and my truck is facing southbound already.
>
> So, that's when the cop turned the lights on and I know it was a cop. So, that's why—well, I stopped, like, what do I do with a cop? So, I put my hands up. And the truck was already off. So, before I even get out of the car, the cop didn't even told me anything [sic]. He just started shooting at me. Well, I heard the shots, but I didn't know what he was shooting until I felt my hand, like—like, man, this guy's shooting at me. So, I turned my truck back on and I tried to get away because he's shooting at me for no reason. So, I go this way, back south, but he's on the other side of the car. I think I recall he's never in my way or anything. So, I just keep going, not even like half a block away. I couldn't drive anymore. I just put the truck in park and fell to the floor. And that's when the officers got there and stopped the bleeding and stuff.

Appellant further told Vela that he "did a little coke" before he went home on his motorcycle. After the incident, appellant was taken to the hospital where he underwent surgery to treat his bullet wounds. He denied that his truck ever touched any officer's vehicle, and he denied attempting to harm the officer, stating:

5

I might have lost control when he tried to stop me, but I never tried to—if I would have tried to hurt him, I would have crashed right in front of him, face to face, or hit him or something, and I didn't never, ever try to hurt him or never tried to do anything. I was just trying to get away because he was (inaudible).

Later in the interview, appellant stated that he made a "wrong decision" in "trying to get away" because he "had no reason to run away" except that he did not want his truck to be impounded.

The jury found appellant guilty of attempted capital murder and aggravated assault against a public servant. *See id.* §§ 15.01, 19.03(a)(1), 22.02(b)(2)(B). Following the punishment phase, the jury found the State's enhancement allegation true and assessed punishment at forty years' imprisonment on each count. This appeal followed.

## II. DISCUSSION

### A. Double Jeopardy

We first address appellant's sixth issue, by which he argues that his convictions, both of which were based on the same alleged actions on the night of June 11, 2015, violate the constitutional prohibition against double jeopardy.

The Double Jeopardy Clause, contained within the Fifth Amendment and applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense. U.S. CONST. amends. V, XIV; *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). Generally, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is "whether each provision requires proof of a fact which the other does not." *Littrell*, 271 S.W.3d at 276 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). The focus is on the elements alleged in the charging instrument, not on the offense as defined in the penal code.

6

*Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014); *Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013).

The State concedes that the two convictions violate double jeopardy because they constitute multiple punishments for the same offense, and it agrees with appellant that only one of the convictions may stand.[2]

When a defendant is convicted in a single criminal trial of two offenses that are considered the same for double jeopardy purposes, the remedy is to vacate one of the convictions. *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018). The Texas Court of Criminal Appeals has held that the conviction which should be retained is the one for the "most serious offense," which is the offense for "which the greatest sentence was assessed." *Id.*; *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (citing *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex. Crim. App. 1997)). Here, appellant was sentenced to forty years' imprisonment for each first-degree felony count. However, the aggravated assault conviction contained an affirmative finding that appellant used or exhibited a deadly weapon in committing the offense; the attempted capital murder conviction did not contain such a finding. The aggravated assault conviction, therefore, is the judgment which must be retained in this case. *See Villaneuva v. State*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007) (holding, where identical prison terms and fines were assessed for two counts in violation of double jeopardy, the conviction that should be retained is the one which contained an affirmative finding of use

---

[2] Appellant did not object on double jeopardy grounds at trial; however, such a claim may be raised for the first time on appeal when "(1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). The State does not dispute that both prongs apply here.

of a deadly weapon).[3]

We sustain appellant's sixth issue. Because the conviction on Count I will be vacated, appellant's first, second, and fourth issues are overruled as moot. *See* TEX. R. APP. P. 47.1.

## B. Sufficiency of the Evidence

By his fifth issue, appellant challenges the sufficiency of the evidence to support the convictions. In reviewing evidentiary sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State*, 491 S.W.3d 771, 774 (Tex. Crim. App. 2016); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2017 1st C.S.). We determine, based upon the cumulative force of all of the evidence, whether the necessary inferences made by the jury are reasonable. *Griffin*, 491 S.W.3d at 774.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.

---

[3] When a defendant is sentenced to exactly the same punishment for two offenses in violation of double jeopardy, and no tie-breakers apply, the State may elect which conviction to vacate. *Bien v. State*, 550 S.W.3d 180, 188 (Tex. Crim. App. 2018); *Almaguer v. State*, 492 S.W.3d 338, 349 (Tex. App.—Corpus Christi 2014, pet. ref'd). However, as set forth above, the sentences are not precisely equal in this case because one contains an affirmative deadly weapon finding. *See Villaneuva v. State*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007). Even if we were to defer to the State's election, the State has elected to retain the aggravated assault conviction, so the result would be the same.

8

Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *Malik*, 953 S.W.2d at 240. In this case, a hypothetically correct jury charge would instruct the jury to find appellant guilty as charged in Count II if he: (1) intentionally or knowingly (2) threatened Guerra with imminent bodily injury; (3) used or exhibited a deadly weapon during the commission of the assault; and (4) knew that Guerra was then and there lawfully discharging an official duty as a public servant. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (West, Westlaw through 2017 1st C.S.), 22.02(a)(2), (b)(2)(B). A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. *Id.* § 6.03(a) (West, Westlaw through 2017 1st C.S.); *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (noting that assault by threat is a conduct-oriented offense). A person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. TEX. PENAL CODE ANN. § 6.03(b); *Landrian*, 268 S.W.3d at 536.

Appellant argues specifically that there was insufficient evidence that his actions "could have been perceived as objectively threatening imminent bodily injury under the circumstances," given that appellant "drove towards but never actually close to" Guerra.[4]

---

[4] Appellant also contends by this issue that the evidence was insufficient to show that he: (1) harbored the specific intent to commit capital murder; or (2) engaged in conduct he knew with reasonable certainty would result in death. However, these elements pertain only to the attempted capital murder count, and we have already concluded that conviction on this count must be vacated. Accordingly, these sub-issues are moot. *See* TEX. R. APP. P. 47.1.

9

We disagree. "Threat" is defined as "[a] communicated intent to inflict harm or loss on another or on another's property . . . ." *Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006) (citing BLACK'S LAW DICTIONARY 1203 (7th ed. 2000)). The "crucial inquiry" is "whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility." *Id.* at 347 (quoting *Anthony v. United States*, 361 A.2d 202, 206 (D.C. 1976)). Here, Guerra testified that, as he was positioned behind his driver's-side door for cover, appellant drove his truck "directly at" him, and Hernandez corroborated this account. Guerra stated that he feared for his life and that appellant's truck made contact with his patrol unit. Although appellant testified that he was merely attempting to escape, that he did not attempt to harm the officer, and that his truck did not make contact with the officer's vehicle, the jury was entitled to disbelieve this testimony and instead believe the testimony of the officers. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.")

Appellant maintains that his conduct, as established by the evidence, did not "authorize [an officer] to unholster and re-enact 'the Gun Fight at the OK Corral' like Officer Guerra did here." But we are not presented with the question of whether Guerra's actions were prudent or justified; rather, we are merely asked whether appellant, by his conduct, threatened Guerra with imminent bodily injury. The evidence was sufficient to support the jury's finding beyond a reasonable doubt that he did. Appellant does not argue that the evidence was insufficient to support the other elements of the offense. We therefore overrule appellant's fifth issue.

10

## C.    Improper Comment

By his third issue, appellant complains about a remark made by the trial court during the punishment phase of trial.  The record reflects that, immediately after the State rested, the trial court stated:  "All right.  Then the Court does go ahead and find beyond a reasonable doubt that the offenses to which the defendant has been previously convicted and that the evidence has been offered [sic]."  The defense then rested and the trial court began to read the punishment charge to the jury.  Before the trial court finished reading the charge, defense counsel moved for mistrial based on the above remark, and the trial court denied the motion.  The trial court also denied appellant's motion for new trial made on the same basis.

On appeal, appellant contends that the trial court's comment deprived him of his constitutional rights to due process and a fair trial.[5]  *See* U.S. CONST. amends. V, XIV.  The State concedes that the comment was improper and constituted error.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West, Westlaw through 2017 1st C.S.) (providing that a trial judge may not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case").  The State argues, though, that the error was harmless under the appropriate standard.

The comment at issue was apparently an inadvertent misstatement which, though ambiguous, could have easily been interpreted by the jury as an opinion on the veracity

---

[5] Appellant further contends that the trial court's comment constituted "structural error" which need not be preserved for appeal by trial objection.  *See Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993) ("Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system . . . . A principle characteristic of these rights is that they cannot be forfeited.  That is to say, they are not extinguished by inaction alone.").  However, the State concedes that defense counsel preserved the issue by timely moving for mistrial.  *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) ("A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.").

of the enhancement allegation. Nevertheless, assuming that the remark constituted error, we agree with the State that appellant has not shown he has been harmed to the requisite degree.

Because appellant alleges constitutional error, we must reverse the judgment as to punishment unless we determine "beyond a reasonable doubt that the error did not contribute to the . . . punishment." TEX. R. APP. P. 44.2(a); *cf. Proenza v. State,* 541 S.W.3d 786, 802 (Tex. Crim. App. 2017) (holding, where appellant complained of improper trial court remarks but asserted only statutory error, that the applicable harm standard is for non-constitutional error under Texas Rule of Appellate Procedure 44.2(b)). Here, defense counsel declined to cross-examine the only punishment witness, a fingerprint expert who testified that appellant's fingerprints matched those appearing on the pen packet exhibiting the prior conviction. Moreover, immediately after defense counsel brought the complained-of remark to the trial court's attention, the trial court concluded reading the punishment charge as to Count I and admonished the jury as follows:

> Now, in this charge of the Court, ladies and gentlemen, you are instructed, as I read to you earlier, that any remarks or rulings that a Court may make are not to be considered by you as any indication of the Court's opinion as to the punishment of the defendant. And I've read the entire charge to you. And previous to the reading of the Charge, the Court may have made a comment about the Court finding—making any findings. The findings are for you and you alone to make. So, if the Court did, indeed, make such a finding, you are instructed that it is not the comments of this Court that will govern your actions but the Charge of the Court, which specifically say[s] that you and you alone are the ones that are to make the determinations in the Charge of the Court. So, you are instructed to disregard rulings or comments that the Court may have made on the basis of the evidence which you and you alone will decide.

Additionally, the written punishment charges each stated:

> During your deliberations, you are instructed that you should not consider

12

the remarks, rulings or actions of the presiding judge during this trial as any indication of the Court's opinion as to the punishment of the Defendant. The remarks, rulings and actions of the presiding judge were upon matters of the law only and were not upon the facts which you, and you alone, must determine.

Considering the state of the record, we find that these instructions were sufficient to cure the error, and we conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment. *See* Tex. R. App. P. 44.2(a); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (observing that reviewing courts "generally presume the jury follows the trial court's instructions in the manner presented"); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—San Antonio 2001, pet. ref'd) (observing that an "instruction by the trial judge to the jury to disregard any comments made by him or her is generally sufficient to cure any error arising from his or her statements"). Appellant's third issue is overruled.

## D. Modification

The judgment as to Count II states that appellant pleaded "TRUE TO ONE" of the State's enhancement allegations. The record reflects, however, that appellant pleaded "not true" to the allegations.

Although the issue is not raised by any party, we may modify a judgment *sua sponte* to correct the record when we have the necessary information to do so. *See Banks v. State*, 708 S.W.2d 460, 461 (Tex. Crim. App. 1986). Accordingly, we hereby modify the judgment as to Count II to reflect that appellant pleaded "not true" to the enhancement allegations.

## III. Conclusion

We reverse the trial court's judgment of conviction as to Count I, attempted capital murder, and we render a judgment of acquittal as to that count. The trial court's judgment

13

of conviction as to Count II, aggravated assault of a public servant, is affirmed as modified herein. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 29th
day of November, 2018.