*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-130

WINSTON MANUEL PEREZ HERNANDEZ, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-13406-14)

(Hon. Patricia A. Wynn, Trial Judge)

(Argued September 27, 2016             Decided May 9, 2019)

*Lisa S. Resnikoff* for appellant.

*Ryan M. Malone*, Assistant United States Attorney, with whom *Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Kamil Shields*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER, BECKWITH, and EASTERLY, *Associate Judges*.

Opinion for the court by *Associate Judge* EASTERLY.

Opinion by *Associate Judge* FISHER, dissenting, at page 22.

EASTERLY, *Associate Judge*:  In this appeal, we consider for the first time whether a single unwanted touching of another person on the arm, without any evidence that the touching was attempted (or achieved) with force or violence, can support a conviction for simple assault under an attempted-battery theory.  We hold it cannot.[1]

## I.      Facts and Procedural History

Although our focus in this appeal is on an unwanted touch on the arm, that was not the government's interest at trial.  The government's theory of the case, which it set forth in its opening statement to the trial court, was that appellant, Winston Perez Hernandez, had violently attacked complainant, Alimamy Tarawallie, after the two friends watched a 2014 World Cup soccer match[2] together.  The prelude to this attack was Mr. Tarawallie's request that Mr. Perez Hernandez stop touching him.  The government said that the evidence would show that Mr. Perez Hernandez, in response to Mr. Tarawallie's request, first put his finger in Mr.

---

[1]  Having so concluded, we need not address the other arguments Mr. Perez Hernandez raises in this appeal.

[2]  The match was the Germany versus Brazil semifinal, which Germany won 7-1.

Tarawallie's eye and then, after Mr. Tarawallie pushed him away, hit Mr. Tarawallie over the head with a beer bottle.

In support of this narrative, the government called Mr. Tarawallie as its main witness. Mr. Tarawallie testified that he had invited a group of friends, including Mr. Perez Hernandez, over to his home to watch the match, and, after the game, the group moved outside. Mr. Perez Hernandez, who was drinking beer from a bottle, came over to talk to Mr. Tarawallie. While Mr. Perez Hernandez spoke, he touched Mr. Tarawallie. Mr. Tarawallie did not specify where exactly Mr. Perez Hernandez touched him, and the government did not ask a follow-up question to elicit this information, but it appears Mr. Perez Hernandez touched Mr. Tarawallie somewhere on his arm.[3] Mr. Tarawallie did not like that physical contact[4] and asked Mr. Perez Hernandez not to touch him. But Mr. Perez Hernandez "did not seem to listen . . . [a]nd he started saying stuff against" Mr. Tarawallie and asking if he did not want Mr. Perez Hernandez to touch him because Mr. Perez Hernandez is black. Mr. Tarawallie explained that it was "nothing about color," and told Mr. Perez

---

[3] Another government witness, Detective Ryan Savoy, testified that Mr. Perez Hernandez later told the detective that he "had touched [Mr. Tarawallie] on the arm."

[4] Mr. Tarawallie explained, "I'm not the type of person that talk and touch, you know, feeling people. Not even touch, but to feel people when they talk, you know, I don't do that."

Hernandez "to stop touching me if you talk. Just talk and I'll listen to you." Mr. Perez Hernandez then asked Mr. Tarawallie: "If I touch you, what you going to do to me?" Mr. Tarawallie responded, "if you touch me, I'll push you." According to Mr. Tarawallie, Mr. Perez Hernandez disregarded this warning and "touched" Mr. Tarawallie again, "put[ting] his finger [or fingers] on [Mr. Tarawallie's] face," specifically in both of his "eyes."[5]

Mr. Tarawallie testified that, in response to Mr. Perez Hernandez's actions, he pushed Mr. Perez Hernandez, and Mr. Perez Hernandez then hit him on the forehead with a beer bottle. Somehow both men ended up on the ground. Mr. Perez Hernandez was on top of Mr. Tarawallie and banged Mr. Tarawallie's head against the sidewalk. Mr. Perez Hernandez then "ran away" from the scene of the incident. Mr. Tarawallie testified that he was bleeding as a result of the attack and was also bruised on the back of his head.

On cross-examination, the defense challenged Mr. Tarawallie's account of the incident, eliciting an admission from him that he had said he would "punch"—not

---

[5] Throughout direct examination, the government exclusively referred to this contact as a "touch"—for example, the government asked Mr. Tarawallie to demonstrate "the position of [Mr. Perez Hernandez's] fingers when he touched you."

push—Mr. Perez Hernandez if Mr. Perez Hernandez touched him again. The defense highlighted the inconsistency between Mr. Tarawallie's statement to the police and his testimony on direct examination on the subject of where and how Mr. Perez Hernandez had touched Mr. Tarawallie after being asked not to—specifically whether he put his finger or fingers in Mr. Tarawallie's eye or eyes.[6] The defense also established that the beer bottle Mr. Perez Hernandez allegedly used as a weapon had been found under a bush, some twenty to thirty feet away from the incident, even though Mr. Tarawallie maintained that neither he nor Mr. Perez Hernandez had touched the bottle after it fell to the ground.[7] Lastly, the defense established that Mr. Tarawallie had no visible injuries to the back of his head.

The government also called Officer William Schoppman and Detective Savoy to the stand. Officer Schoppman testified that he had responded to the scene but had not seen the fight in progress; Detective Savoy spoke to Mr. Perez Hernandez after he turned himself in and agreed to be interviewed by police. Through Officer Schoppman, the defense confirmed the location of the beer bottle and the minimal

---

[6] In one question, defense counsel used the word "poke" to describe this action, but then rephrased, asking Mr. Tarawallie, "you said that, you testified that he poked you, he put his finger in your eye, in your eyes."

[7] On redirect examination, Mr. Tarawallie testified that he saw it "fl[y] over and fall" in the location where the police found it.

extent of Mr. Tarawallie's injuries. Through Detective Savoy, the defense elicited testimony that Mr. Perez Hernandez told the police that Mr. Tarawallie had attacked him and that he had acted in self-defense.

In addition to eliciting evidence in the government's case-in-chief that undercut the government's theory, the defense called Bismark Enrique Serrano Baez, who was present at Mr. Tarawallie's home to watch the World Cup game and saw the fight. Mr. Baez testified that Mr. Tarawallie "wasn't happy" when Brazil lost to Germany. He saw Mr. Perez Hernandez talking to Mr. Tarawallie outside, telling him he should not feel badly about Brazil's defeat because he had not lost any money on the match. Mr. Baez then heard Mr. Tarawallie say "don't touch my arm or you're going to see what is going to happen to you." Mr. Tarawallie also warned Mr. Baez that there would be an issue if Mr. Perez Hernandez touched him again. Mr. Perez Hernandez "touched [Mr. Tarawallie's] arm again," at which point Mr. Tarawallie "reacted violently and . . . punched" Mr. Perez Hernandez. Mr. Perez Hernandez ended up on the sidewalk with Mr. Tarawallie on top of him. When he flipped Mr. Tarawallie onto the ground to extricate himself, Mr. Tarawallie's head hit the ground. Mr. Perez Hernandez, who was himself bloodied by the incident, then walked away.

In closing argument, the government stated that it "want[ed] to be crystal clear. The touch by Mr. Perez Hernandez is not why we are here." The government explained:

> *That isn't assault, it's an unwanted touching.* But the Government submits that the assault that is here, that is present, is where Mr. Perez Hernandez hit Mr. [Tarawallie] with a bottle. So his reaction about being touched, even if it may have been extreme, even if he got a little upset. That's not why Mr. [Tarawallie] called the police, that's not what landed Mr. [Tarawallie] with a scrape on his head, it is the bottle.

(Emphasis added.) Previewing its doubt about the government's theory, however, the trial court asked the government, "[y]ou said that the reason we're here has to do with the bottle. Do you, are you arguing at all that that initial touching, or at least the second touching is an assault?" The government then backtracked: "It is an assault, Your Honor. . . . [A]n unwanted touching is standard textbook assault."

After continuing the case to allow the parties to file supplemental briefs discussing whether an unwanted touch alone could sustain a simple assault conviction, the court announced its verdict. The trial court found that the government had not proved beyond a reasonable doubt either that Mr. Perez Hernandez had hit Mr. Tarawallie with a bottle or that he "poked [Mr. Tarawallie] in the eyes." But the court did find that the government had proved beyond a

reasonable doubt that Mr. Perez Hernandez had touched Mr. Tarawallie "somewhere [o]n his body."[8]

The trial court acknowledged that a simple assault charge based solely on a touch "is something that we would not usually see in the courts. I mean, there's a reason why there's not a lot of case law here." The court further acknowledged that, in the cases that it had reviewed discussing "offensive touching," the "contact was . . . significantly more than what we have here," and the particular facts made it "really more offensive" or "more threatening." Nevertheless, focusing on the fact that the touch in question had followed Mr. Tarawallie's admonition to Mr. Perez Hernandez not to touch him again, the court concluded that the touch was

---

[8] The trial court actually used the word "poked"—"I do find . . . that he poked him somewhere on his body"—which suggests a more aggressive type of action. But there is no evidence in the record of Mr. Perez Hernandez "poking" Mr. Tarawallie at any time. The government never used the word "poke" in its questions and neither Mr. Tarawallie nor any of the other witnesses who testified ever used it in their answers. The only time "poke" appears in the transcript of the trial testimony is in a question by defense counsel that was rephrased midsentence. See note 6 *supra*. (To the extent the government adopted the word "poke" in its closing argument, it did so to recharacterize Mr. Tarawallie's discredited testimony that Mr. Perez Hernandez had put his finger or fingers in Mr. Tarawallie's eye or eyes.)

Because the trial court concluded that Mr. Tarawallie's account of the incident could not be credited beyond a reasonable doubt, the only evidence in the record the court could have relied on for any post-warning contact was Mr. Baez's testimony that Mr. Perez Hernandez had "touched" Mr. Tarawallie on the arm. We thus understand the court to have implicitly credited Mr. Baez's account of a second "touch."

"objectionable and offensive" and thus a criminal act punishable as simple assault. Accordingly, the court found Mr. Perez Hernandez guilty.

## II. Analysis

Mr. Perez Hernandez challenges the sufficiency of the evidence to support his conviction for simple assault under D.C. Code § 22-404(a)(1) (2013 Supp.) (originally enacted as part of "an Act to establish a code of law for the District of Columbia," ch. 854, § 806, 31 Stat. 1189, 1322 (Mar. 3, 1901)). Our review is de novo, and the legal question we must answer is whether, viewing the evidence in the light most favorable to the verdict, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas v. United States,* 783 A.2d 125, 134 (D.C. 2001) (en banc) (emphasis in original, citation omitted).

The essential elements of simple assault do not appear in D.C. Code § 22-404; instead they have been defined in this court's case law. *Ray v. United States*, 575 A.2d 1196, 1198 (D.C. 1990); *Robinson v. United States*, 506 A.2d 572, 573–74 (D.C. 1986). We have recognized three types of assault in this jurisdiction: attempted-battery, intent-to-frighten, and nonviolent sexual touching. *See Alfaro v.*

*United States*, 859 A.2d 149, 156 (D.C. 2004).  The government prosecuted this case as an attempted-battery assault (in fact completed[9]).

Attempted-battery assault derives from pre-statutory common law, and it has long been defined in this jurisdiction as "an attempt *with force or violence* to do corporal injury to another," consisting of "any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Sousa v. United States,* 400 A.2d 1036, 1044 (D.C. 1979) (quoting *Guarro v. United States*, 237 F.2d 578, 580 (D.C. Cir. 1956) (quoting *Patterson v. Pillans*, 43 App. D.C. 505, 506–07 (D.C. Cir. 1915) (emphasis added))).[10]  Some version of this definition has been

_____

[9] *See Ray*, 575 A.2d at 1199 ("Proof of a battery will support a conviction of assault.") (brackets omitted).  D.C. does not define or criminalize the crime of "battery."  Our jurisdiction might be well-served by a statutory scheme that more clearly defines and distinguishes between inchoate "assaults" and crimes where completed physical contact causes injury.  This reflects the modern trend and is recommended by the Model Penal Code and the District's Criminal Code Reform Commission.  *See* WAYNE R. LAFAVE, CRIMINAL LAW § 16 (5th ed. 2010); MODEL PENAL CODE § 211.1; DISTRICT OF COLUMBIA CRIMINAL CODE REFORM COMM'N, COMPILATION OF DRAFT REVISED CRIMINAL CODE STATUTES TO DATE 38–41 (March 12, 2019), https://ccrc.dc.gov/sites/default/files/dc/sites/ccrc/publication/attachments/Compilation-of-Draft-RCC-Statutes-to-Date-3-12-19.pdf.  But that is a matter for the Council of the District of Columbia, not this court.

[10] Intent-to-frighten assault likewise requires proof that a defendant acted with force or violence, but the mens rea element is more expansively defined.  When an attempted-battery assault is charged, the government must prove that the

incorporated in the District's jury instructions for attempted-battery assault since the District of Columbia first published uniform jury instructions.[11]  Per that instruction, the government must prove that the defendant (1) "with force or violence, injured or attempted or tried to injure" the complainant (actus reus, conduct element); (2) "intended to use force or violence against" the complainant (mens rea); and (3) "had the apparent ability to injure" the complainant "at the time" (actus reus, circumstance element).  Criminal Jury Instructions for the District of Columbia, No. 4.100(A) (5th ed. 2018) (cleaned up) ("Criminal Jury Instructions"); *see Carrell v. United States*, 165

---

defendant directed the forceful or violent act toward the complainant with an intent "to cause physical injury."  *Robinson*, 506 A.2d at 574; *see also Williams v. United States*, 887 A.2d 1000, 1003 n.9 (D.C. 2005).  When the government seeks to obtain a conviction for intent-to-frighten assault, it must prove the defendant "intended *either* to cause injury *or* to create apprehension in the victim by engaging in some threatening conduct."  *Robinson*, 506 A.2d at 574 (emphasis added).

Nonviolent sexual touching assault does not require proof that the defendant acted with force or violence; rather, "the sexual nature of the conduct supplies the element of violence or threat of violence" traditionally required to prove an assault crime.  *In re A.B.*, 556 A.2d 645, 646 (D.C. 1989) (brackets and citation omitted).

[11]  *Compare* Criminal Jury Instructions for the District of Columbia, No. 4.100(A) (5th ed. 2018) *with* instructions reproduced in *Robinson*, 506 A.2d at 574. *See also* Criminal Jury Instructions for the District of Columbia, No. 53 (1st ed. 1966) ("An assault is an attempt or effort, with force or violence, to do injury to the person of another, coupled with the apparent present ability to carry out such attempt"); Criminal Jury Instructions for the District of Columbia, No. 4.11 (2d ed. 1972) (defining the elements of assault).

A.3d 314, 319–20 & n.13 (D.C. 2017) (en banc) (distinguishing, within the actus reus of an offense, between conduct, circumstance, and result elements).

The question before us is whether—in light of this court's longstanding articulation of the elements of attempted-battery assault as including an actus reus conduct element, "with force or violence"—the single act of touching someone on the arm after being asked not to do so, see note 8 *supra*, amounts to an attempted-battery assault. We are unable to conclude that it is. A touch is inherently neither "forceful" nor "violent" within the common understanding[12] (or even legal understanding[13]) of those terms. *Cf. Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011) (explaining that when a statute uses a word without defining it, and the word is not a recognized term of art, "we presumptively should construe it according to its meaning in ordinary or common speech" absent a compelling reason to do

---

[12] *See Force*, MERRIAM-WEBSTER INC., WEBSTER'S THIRD NEW INT'L DICTIONARY, UNABRIDGED (1981) ("Power, violence, compulsion, or constraint exerted upon or against a person or thing"); *Violence*, *id.* ("Exertion of any physical force so as to injure or abuse (as in warfare or in effecting an entrance into a house)").

[13] *See Force*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Power, violence, or pressure directed against a person or thing"); *Actual Force*, *id.* ("Force consisting in a physical act, esp. a violent act . . ."); *Violence*, *id.* ("The use of physical force, usu. accompanied by fury, vehemence, or outrage; esp., physical force unlawfully exercised with the intent to harm").

otherwise.) If it were, this court would not have had to resort to a legal fiction—holding that in nonviolent sexual touching cases, the sexual nature of the touch substitutes for the requirement that a defendant act with force or violence, see note 10 *supra*—to justify their prosecution under our simple assault statute.[14]

Moreover, we can find no decision in our case law where we have upheld a criminal conviction for an attempted-battery assault based on a nonforceful and nonviolent, albeit disagreeable, touch. In the tort context, where the stakes are lower, we have held that a single touch was not an assault under Maryland law because there was no "indication of . . . undue force." *See Shaw v. May Dept. Stores Co.*, 268 A.2d 607, 610 (D.C. 1970). Likewise, in the criminal context, our cases reflect that attempted-battery assault does not extend to tort-type invasions of personal space. At least to date, the crime of attempted-battery assault has been reserved for belligerent conduct[15] that falls at the bottom of our now "three-tiered classification

---

[14] More fundamentally, if force or violence do not circumscribe the actus reus conduct element in some meaningful way, it is unclear why this court discerned any need to recognize a distinct theory of assault for nonviolent sexual touching.

[15] *See, e.g.*, *Buchanan v. United States,* 32 A.3d 990, 991 (D.C. 2011) (sufficiency of evidence unquestioned as to the conduct element of actus reus where defendant "struck" the officer, but remand required to determine if he "intended to use force against the officer")*; Watson v. United States*, 979 A.2d 1254, 1257 n.3 (D.C. 2009) (affirming attempted-battery assault conviction where defendant "forced" part of his body into his wife's car, "snatched" the keys from the ignition,

system of assault." *In re D.P.*, 122 A.3d 903, 908 (D.C. 2015) (explaining that the District has a continuum of assault crimes that permit conviction for simple assault, a misdemeanor, where there is no or only minimal injury to the complainant, felony assault where there is significant bodily injury, or aggravated assault where there is serious bodily injury).[16]

*Harris v. United States*, 201 A.2d 532 (D.C. 1964), is arguably the furthest our precedent has pushed the boundaries of the conduct element of attempted-battery assault. In that case, a "Negro" defendant was alleged to have stolen the complainant's wallet when the complainant stooped to pick up a dropped coin in a bus terminal. *Id.* at 533–34. "[A]ppellant fumbled with the cuffs of [the

---

and "grabbed" her phone from her hand"); *Dunn v. United States*, 976 A.2d 217, 222 (D.C. 2009) (explaining that defendant's "shove was an [attempted-battery] assault even if it did not cause [the complainant] any physical harm"); *Lewis v. United States*, 938 A.2d 771, 782 (D.C. 2007) (affirming attempted-battery assault conviction where defendant conceded he "smacked" a pipe out of someone's else's mouth); *Williams*, 887 A.2d at 1002, 1004 (sufficiency of evidence unquestioned as to conduct element of actus reus where defendant threw a shoe, but remand required to determine if defendant threw shoe at the complainant-police officer and thus intended "to use violence against [the officer]"); *Parks v. United States*, 627 A.2d 1, 7 (D.C. 1993) (evidence that defendant had picked up a gun from the floor of his car during a traffic stop sufficient to support conviction for assault on an attempted-battery theory); *Ray*, 575 A.2d at 1199 (spitting is a type of "forcible assault").

[16] *See also* D.C. Code § 22-404(a)(2) (assault with significant bodily injury); D.C. Code § 22-404.01(a) (aggravated assault).

complainant's] trousers and reached between [complainant's] feet from behind." *Id*. The complainant "felt himself being jostled, feeling impact at the area of his hip pocket." *Id*. On appeal, the defendant did not challenge his petit larceny conviction, but argued that "a nonviolent, noninjurious contact unaccompanied by any intention of using actual violence [could not] constitute assault" under the District's law. *Id*. at 534. One of our predecessor courts, writing not long after the District began desegregating, concluded that the defendant's conviction for assault could be upheld because "'violence' in its ordinary meaning is not a necessary element of assault, for an attempt to do unlawfully to another any bodily injury however small constitutes an assault." *Id.* at 534. But in determining that an actual showing of "violence in its ordinary meaning" was not necessary in every case, the court indicated that in the absence of such a showing, proof of an act of *force* was still essential: The court expressly stated that it was "significant[]" that it was "not concerned with the pickpocket who steals *without* pushing or jostling his intended victim." *Id*. at n.5 (emphasis in original).

The government invites us to disregard the "force or violence" requirement that pervades our case law discussing attempted-battery assault and has long been memorialized in our standard jury instructions. The government first cites to *Ray*, 575 A.2d at 1199, for the proposition that a "conviction will be upheld when the

assaultive act is merely offensive, even though it causes or threatens no actual physical harm to the victim." We reaffirm the principle that attempted-battery assault is an inchoate offense: no contact, much less actual injury, need be proved. *Cf. Brooks v. United States*, 655 A.2d 844, 845 n.2 (D.C. 1995). But the fact that attempted-battery assault requires no proof of "physical pain, no bruises, no breaking of the skin, no loss of blood, no medical treatment," *Ray*, 575 A.2d at 1198, does not negate our longstanding rule that there must be proof that the defendant acted with "force or violence."[17] *Id.* (discussing the elements of attempted-battery assault and explaining that for the actus reus element, "*[f]irst, there must be an act* on the part of the defendant; mere words do not constitute an assault. The act does not have to result in injury; it can be . . . an actual attempt, *with force or violence*, to injure another") (emphasis added) (internal punctuation and citation omitted); *see also id.*

---

[17] We do not understand the court in *Comber v. United States* 584 A.2d 26, 50 (D.C. 1990) (en banc), to have sua sponte eliminated this requirement when it stated, in its comprehensive discussion of types of homicides, that "simple assault . . . is designed to protect not only against physical *injury*, but against all forms of offensive touching and even the mere threat of such touching." *Id.* at 50 (emphasis in original) (internal citations omitted). The court was not providing a targeted explication of the elements of attempted-battery assault; instead, in the context of an explication of the history and elements of misdemeanor involuntary manslaughter, the court was making a collective reference to all three types of assaults—attempted-battery, intent-to-frighten, and nonviolent sexual touching—as evidenced by the cases to which the en banc court cited. *See id.* (citing *Guarro*, 237 F.2d at 580–81 (nonviolent sexual touching assault); *Ray*, 575 A.2d at 1199 (attempted-battery assault); and *Robinson*, 506 A.2d at 574 (intent-to-frighten assault)).

at 1199 (explaining that spitting falls within the category of forcible assaults because "it is an application of force to the body of the victim") (internal quotation and citation omitted); *id.* (holding that "[s]ince [spitting] is an application of force to the body of the victim, we hold that it is an assault punishable under D.C. Code § 22-[4]04").

The government also asserts that "[t]ouching someone after the person has said not to touch him constitutes an assault because it is, as set forth in Criminal Jury Instructions for the District of Columbia, No. 4.100 (5th ed. 2018), 'a touching offensive to a person of reasonable sensibility.'" The government does not quote from the part of the assault instruction defining the elements of attempted-battery assault. We discuss these elements above but, for ease of reference, we repeat them here: the government must prove the defendant (1) "with force or violence, injured or attempted or tried to injure" the complainant (actus reus, conduct element); (2) "intended to use force or violence against" the complainant (mens rea); and (3) "had the apparent ability to injure" the complainant "at the time" (actus reus, circumstance element). Criminal Jury Instructions.

Instead, the particular language the government quotes is part of the jury instructions' general definition of "injury": "Injury means any physical injury,

however small, including a touching offensive to a person of reasonable sensibility."

*Id.* The jury instructions thus make clear that the government may prove an attempted-battery assault without establishing that the complainant sustained an "injury." But the government may not prove an attempted-battery assault without proving that the defendant acted with force or violence, because without such a requirement the crime of attempted-battery assault has no discernible actus reus conduct element whatsoever.

Lastly, the government calls our attention to *Mahaise v. United States*, 722 A.2d 29 (D.C. 1999), a case in which we observed that "a battery"—a crime that does not exist in the D.C. Code, see note 9 *supra*—is "any unconsented touching of another person," and further that—"since an assault is simply an attempted battery"—"every completed battery necessarily includes an assault." *Id.* at 30. From this, the government apparently wishes us to conclude that anyone who simply touches another without their consent is guilty of the crime of attempted-battery assault.[18] As noted above, we have never interpreted our crime of assault in such an

---

[18] For this proposition, the government also cites to *Perkins v. Commonwealth,* 523 S.E.2d 512 (Va. Ct. App. 2000), which the government describes as a case "where [the] victim pulled [her] head away from [the] touch of [a] deaf defendant, who was trying to get her attention, and defendant touched her again, [the] second touch was 'unauthorized and unwelcome and unwarranted' and constituted assault and battery under Virginia law." But the trial court in *Perkins*

expansive manner. See note 15 *supra*.[19] Nor did we so hold in our five-paragraph

opinion in *Mahaise*, where the question presented was not whether the government

had carried its burden to prove that an attempted-battery assault had occurred, but

whether the appellant had established by clear and convincing evidence that he had

*not* committed an unspecified type of assault such that his arrest record could be

sealed.[20]

---

did not credit that the defendant was merely trying to get the complainant's attention, *id.* at 331; rather it credited the complainant's testimony that the defendant, who was a teacher at her high school, had touched her neck while asking her if it made her "horny." The Virginia appellate court cited these facts in its opinion and thus appears to have affirmed the defendant's assault conviction based on a nonviolent sexual touching theory.

[19] We have quoted the "unconsented touching" language from *Mahaise* in other cases, *see, e.g.*, *Watson*, 979 A.2d at 1257, but none of those cases concerned a mere touch.

[20] In support of his application to seal, Mr. Mahaise submitted to the court an affidavit in which he admitted that he had entered the complainant's bedroom and taken her phone and then her cigarette out of her hands. This court concluded that his affidavit constituted an "admission, at least prima facie," of two assaultive acts. 722 A.2d at 30. We further noted that the fact that he had taken these actions after ignoring "a demand" by the complainant's roommate to leave "may well have made appellant's conduct significantly more threatening." *Id*.

It is far from clear that this court would have concluded that the evidence in the affidavit would have been legally sufficient to sustain an assault conviction beyond a reasonable doubt, particularly on an attempted-battery theory, which the court did not distinguish from an intent-to-frighten theory. Moreover, the conduct at issue in *Mahaise* itself was more than an "unwanted touching," as the government acknowledges by (incompletely) describing it as "*taking* [a] phone and cigarette from [the] victim." (emphasis added).

The dissent takes a different approach from the government and acknowledges that our requirement of force or violence cannot simply be ignored. Instead it suggests that we recognize a new, fourth iteration of simple assault that does not incorporate this requirement—or that we achieve the same result by endorsing a "more specialized legal usage of the word force" that equates force with "even the slightest offensive touching." *Post* at 24 (quoting *Johnson v. United States*, 559 U.S. 133, 139 (2010)).

The dissent's proposals raise the question of this court's proper role in the District's criminal justice system. Generally, this court leaves policy decisions to the legislature; our role is to interpret the law, not create it. That said, as acknowledged at the outset of our analysis, when Congress codified the crime of assault in the District, it gave this court no guidance. The three types of simple assault currently recognized in the District are entirely a product of this court's creation, with reference to common-law principles. For at least four reasons, we are unwilling to use this case as a vehicle to enlarge the law of assault.

First, the facts of this case—touching the arm of a friend who did not want to be touched—do not cry out to us as demonstrating a need to recognize a new type

of simple assault crime. (This view is only strengthened when we add in the consideration that Mr. Tarawallie, who was apparently already upset that his preferred team had lost the World Cup, escalated the situation with Mr. Perez Hernandez by threatening to push or punch his friend if his friend touched him again, and then arguably employed excessive force to "defend" himself against the unwanted touch.) Second, the government has supplied no authority that establishes that a nonviolent, nonforceful touch would have amounted to assault at common law either under an attempted-battery theory or some other theory of assault, and that would allow us to say in good conscience that when the legislature enacted the crime of simple assault it meant to criminalize a nonviolent, nonforceful, disagreeable touch. Third, it has now been understood for decades that attempted-battery assault, as created by this court with reference to the common law, requires proof of an act with force or violence. The Council of the District of Columbia has the power to create new crimes, and it has recently exercised this power to create new assault crimes. See note 16 *supra*. If the Council wishes to expand the crime of assault in the manner in which the dissent—and effectively the government—proposes, it may do so. Fourth and relatedly, we are concerned that an unwanted touch, without force or violence, is not generally considered a criminally assaultive act. Indeed, the government attorney in this case initially told the trial court that an unwanted touch "isn't assault." And in another case recently argued before this court, a government

attorney took the position at oral argument that an unwanted touch, without more, was not an assault. If some prosecutors and, indeed, members of this court do not readily perceive a touch without force or violence to be a criminal assault, we have little confidence that the lay public subscribes to that understanding. The Council, not this court, seems the best forum for this debate.

For all these reasons, we decline to expand the crime of attempted-battery assault under D.C. Code § 22–404(a)(1) by discarding the actus reus/conduct element requiring a defendant act with force or violence. Mr. Perez Hernandez did not so act when he touched Mr. Tarawallie once on the arm after Mr. Tarawallie asked him to stop. The evidence is thus legally insufficient to sustain Mr. Perez Hernandez's conviction for simple assault under an attempted-battery theory, and we reverse and remand for entry of a judgment of acquittal.

*So ordered.*

FISHER, *Associate Judge*, dissenting: Over the last century this court and its predecessors have tried many times, with mixed success, to define the common law crime of assault; some of the things we have said are difficult to reconcile. This

case, which was prosecuted as a traditional clubbing with a beer bottle but morphed into something quite different, presents a fresh challenge.

The premise of the majority opinion is that we recognize only three types of assault: attempted battery, intent-to-frighten, and offensive sexual touching. In other words, my colleagues conclude, there is no separate category of non-sexual offensive touching -- if this conviction is to be upheld, it must qualify as an attempted battery assault.

I do not read our decisions so restrictively. For example, this court sitting *en banc* has recognized that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching." *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc). By way of illustration, *Comber* cited not only a case of offensive sexual touching but also *Ray*, where the defendant was convicted for spitting on another person.

The decision in *Ray* sends mixed signals. At some points it focuses on whether the act of spitting "was an attempt, with force or violence, to injure another"

and concludes that "[s]ince it is an application of force to the body of the victim, . . . it is an assault punishable under" the D.C. Code. 575 A.2d 1196, 1198, 1199 (D.C. 1990). At another point we distilled from our cases "that an assault conviction will be upheld when the assaultive act is merely offensive, even though it causes or threatens no actual physical harm to the victim." *Id.* at 1199.

But perhaps there is no real difference here at all, merely "a more specialized legal usage of the word 'force.'" *Johnson v. United States*, 559 U.S. 133, 139 (2010) (discussing the common law crime of battery). "The common law held [the] element of 'force' to be satisfied by even the slightest offensive touching." *Id.*; *see also id.* at 146 (Alito, J., dissenting) ("The term 'force,' as the Court correctly notes, had a well-established meaning at common law that included even the 'slightest offensive touching.'").

Nevertheless, the idea of unconsented or offensive touching should not be carried too far. Our decision in *Mahaise* is especially mischievous. Noting that "every completed battery necessarily includes an assault," we asserted that "[a] battery is any unconsented touching of another person." 722 A.2d 29, 30 (D.C. 1998). Taken literally, the latter proposition cannot (or at least should not) be true.

If, during a pleasant conversation, I gently place my hand on a man's shoulder without first obtaining his consent, I should not be subject to prosecution for assault. In those circumstances I would have no reason to anticipate that he would find my friendly gesture offensive.

But it would be quite different if he recoiled in horror and sternly told me, "Don't ever do that again." If I defiantly touch him again in the same manner, I should not be surprised if he either punches me in the nose or complains to the police about an offensive touching. Judge Wynn thought the present case fit this scenario. Assessing whether the conduct would be "objectively offensive to a person of reasonable sensibility," she concluded "that objectively a person reasonably would find that intentional contact after the warning to be objectionable and offensive." Given the present state of our law, I cannot say she was wrong.